JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COBALIS CORPORATION,<br><br>　　　　　Debtor.<br><br>COBALIS CORPORATION, a Nevada corporation,<br><br>　　　　　Appellant,<br><br>　　v.<br><br>YA GLOBAL INVESTMENTS, L.P., WENETA KOSMALA, Chapter 7 Trustee in Bankruptcy, and DOES 1 through 10, inclusive,<br><br>　　　　　Appellees. | Case No.: 8:14-CV-00077-JLS<br>BK No.: 8:07-BK-12347-TA<br>AP No.: 8:13-ap-01047-TA<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S RULINGS RE: DISMISSAL OF APPELLANT'S FIRST AMENDED COMPLAINT** |

1

This case is before the Court on appeal by Appellant Cobalis Corporation from Orders of the United States Bankruptcy Court for the Central District of California. Cobalis has appealed the following Orders of the Bankruptcy Court: (1) Order Granting Weneta M.A. Kosmala's Motion for Order Dismissing First Amended Complaint for Recovery of Usurious Interest Paid, Abuse of Process, and Rescission, dated August 26, 2013 (AP Doc. 130);[1] (2) Order Granting YA Global Investments, L.P.'s Motion for Order Dismissing First Amended Complaint for Recovery of Usurious Interest Paid, Abuse of Process, and Rescission, dated September 16, 2013 (AP Doc. 141) ; and (3) Order Denying Cobalis' Motion for Reconsideration of Orders Granting Motions of Kosmala and YA Global to Dismiss First Amended Complaint, dated December 5, 2013, (AP Doc. 190) (collectively, the "Dismissal Orders.") Cobalis[2] filed an opening brief (Doc. 11) to which Appellees YA Global Investments, L.P. and Weneta M.A. Kosmala, the Chapter 7 trustee ("Trustee"), responded. (Docs. 12 and 13.) Cobalis filed a reply brief. (Doc. 18.) Having reviewed the papers and taken the matter under submission, the Court AFFIRMS the Bankruptcy Court in all respects.

## I. BACKGROUND

### A. The Bankruptcy Proceedings

This case involves a dispute between Cobalis and YA Global that spans nearly seven years of litigation. Cobalis is a Nevada corporation that developed PreHistin, a healthcare product used to treat hay fever symptoms. (First Amended

---

[1] Citations to "AP Doc. __" are citations to the Bankruptcy Court's docket in the Adversary Proceeding *Cobalis Corporation v. YA Global Investsments, L.P., et al.*, No. 8:13-ap-01047-TA (the "Adversary Proceeding"). The Court takes judicial notice of the docket in the Adversary Proceeding. *See* Fed. R. Evid. 201(b).

[2] The opening brief also purports to have been filed on behalf of Montenegrex. Contrary to Cobalis' position (Reply at 2), "Rey Olsen dba Montenegrex" does not have standing to participate in this appeal. In fact, Olsen has never been a party in the Adversary Proceeding and the Bankruptcy Court issued an Order Denying Rey Olsen's Motion to Intervene on Behalf of Montenegrex (AP Doc. 140), which Olsen did not appeal.

Complaint for Recovery of Usurious Interest Paid, Breach of Contract, Abuse of Process, Intentional Interference with Prospective Economic Advantage and Recission ("FAC"), AP Doc. 49.)  YA Global is a Caymans Island limited partnership that provides financing to companies.  In order to acquire additional working capital, Cobalis borrowed $3.85 million from YA Global in December 2006.  (FAC ¶ 4.)  YA Global provided financing to Cobalis pursuant to a Securities Purchase Agreement ("SPA") in which YA Global paid Cobalis $3.85 million for secured debentures convertible into Cobalis' common stock.  (*See id.* ¶ 5.)  Cobalis also issued four warrants to YA Global to purchase 6,640,602 shares of common stock for $5.5 million.  (*See id.* ¶ 7.)  On August 1, 2007, when Cobalis failed to fully redeem the debentures in accordance with the SPA, YA Global filed an involuntary Chapter 7 bankruptcy petition against Cobalis (the "Debtor").  (*See id.* ¶ 13.)  On November 16, 2007, Cobalis converted the Chapter 7 proceeding into a Chapter 11 proceeding.  (*See id.*)

On June 9, 2010, the Bankruptcy Court issued an Order confirming Cobalis' Third Amended Plan of Reorganization (the "Plan") which required Cobalis to make monthly payments, into an Escrow Account for the benefit of YA Global.  (*See* Order on Confirmation of Debtor's Third Amended Plan of Reorganization Dated January 19, 2010 (As Revised) ¶ V(4), BK Doc. 529. [3])  One of the effects of confirming the Plan was to re-vest all of the property of the Estate in the Debtor. (See Plan § VI, ¶ B, BK Doc. 337.)    In July 2011, Cobalis defaulted on the Plan by failing to make an escrow payment.  (*See* FAC ¶ 14.)  Consequently, on August 22, 2011, the Bankruptcy Court converted the action back to a Chapter 7 proceeding.

---

[3]  Citations to "BK Doc. __" are citations to the Bankruptcy Court's docket in the Bankruptcy Case *In re Cobalis Corporation, Debtor*, No. 8:07-bk-12347 (the "Bankruptcy Case").  The Court takes judicial notice of the docket in the Bankruptcy Case.  *See* Fed. R. Evid. 201(b).

(*See* BK Doc. 864.) On August 23, 2011, Kosmala was appointed Trustee of the converted Chapter 7 Estate. (*See* BK Doc. 866.)

On September 20, 2011, YA Global and Trustee entered into a "Global Settlement Agreement." (*See* Notice of Joint Motion Pursuant to Fed. R. Bank. P. 9019 to Approve Global Settlement with YA Global Investments L.P., BK Doc. 902.) In the Global Settlement Agreement, Trustee agreed to release YA Global against "any and all claims . . . known or unknown, fixed or contingent, arising out of or related to the YA Global Released Parties' transactions with and litigation against Cobalis or the Estate that Cobalis or the Estate may have or claim to have. . . ." (Global Settlement Agreement, Doc. 902, Ex. A ¶ 5.1.) Furthermore, the term "claims" was defined as "any and all claims . . . whether now known or unknown, whether or not asserted . . . including but not limited to lender liability, [or] usury. . . ." (*Id.* ¶ 1.7.)

On October 21, 2011, the Bankruptcy Court ordered the escrow agent to disburse all property in the Escrow Account, which consisted of $1.6 million, to YA Global. (*See* BK Doc. 938 at 2.) On November 3, 2011, the Court approved the Global Settlement Agreement. (*See* 11/3/11 Order Granting Joint Motion Pursuant to Fed. R. Bankr. P. 9019 to Approve Global Settlement Agreement with YA Global Investments, L.P. at 2, BK Doc. 958.) The Bankruptcy Court allowed a secured claim in favor of YA Global against Cobalis in the amount of $6 million. (*See id.* at 3.) The Court also approved a public auction sale of the Estate's property wherein YA Global was entitled to a credit bid of $4.5 million. (*See id.*) The Global Settlement Agreement provided for dismissal of all pending adversary actions and appeals. (*See id.*) Cobalis did not appeal, or seek a stay of, the Bankruptcy Court's November 3, 2011 Order.

The auction took place as scheduled on November 16, 2011. (*See id.*) YA Global, as the successful bidder, purchased the Estate's assets with a bid of $2.1

million.  On December 29, 2011, the Bankruptcy Court approved the sale in an Order Authorizing Trustee to Sell Certain Property pursuant to 11 U.S.C. § 363(f). (*See* BK Doc. 987.)  The December 29, 2011 Order: (1) authorized Trustee to sell the bankruptcy estate's property; and (2) required the dissolution of Cobalis.  (*See id.* at 8, 12.)  The Court held, *inter alia*, that: "Conversion of Cobalis' bankruptcy case to chapter 7 caused any property that vested with the reorganized debtor under the Plan to revest in the Estate."  (*Id.* at 8.)  Accordingly, all of the Property was held to be property of the Estate which was subject to sale pursuant to 11 U.S.C. § 363(b).  (*See id.*)

YA brought two adversary proceedings, numbered 1395 and 1416, seeking a declaratory judgment defining the property of the Estate.  The Bankruptcy Court granted summary judgment in favor of YA Global in both adversary proceedings (*See* Order Granting Summary Judgment, Doc. 46 in adversary proceeding no. 8:11-ap-01395-TA, and Order Granting Summary Judgment, Doc. 30 in adversary proceeding no. 8:11-ap-011416-TA.)  In the Order Granting Summary Judgment in the 1395 adversary proceeding, the Bankruptcy Court held, *inter alia*, that "any and all assets that vested with reorganized Cobalis revested in Cobalis' chapter 7 bankruptcy estate (the "Estate") upon conversion of Cobalis' chapter 11 case; Cobalis has no assets following the conversion of its bankruptcy case to chapter 7;" and "Cobalis has no rights or standing with respect to any legal action, appellate or otherwise, pending against Plaintiff, as all such rights and standing have vested in the Estate[.]" (AP No.1395 Doc. 46 at 2.)

### B. Cobalis' First Amended Complaint

In its First Amended Complaint, Cobalis asserts causes of action for (1) Recovery of Usurious Interest Paid and Overpayment in Breach of Contract and (2)

Abuse of Process.[4] (FAC, AP Doc. 49.) In its usury claim, Cobalis alleges that the warrants issued to YA Global as part of the $3.85 million loan had a combined unexercised value of at least $10 million as of the date of the SPA, as calculated by application of the Black-Scholes formula. (*See id.* ¶ 10(a).) The amount borrowed was therefore allegedly paid in full at the time the initial transaction closed on December 20, 2006. (*See id.* ¶ 10(c).) Accordingly, Cobalis alleges that YA Global was never a creditor of Cobalis (*see id.* ¶ 10(d)), and, as a result, Cobalis seeks to vitiate the entire bankruptcy proceeding on the ground that YA Global never had the right to commence an involuntary Chapter 7 proceeding against it in the first place.

With regard to the re-vesting of the usury and overpayment claims in the converted Chapter 7 Estate, Cobalis states:

> The claims based on payments in 2006 – 2008 belong to Cobalis as reorganized debtor because those claims vested in the reorganized debtor at Plan confirmation as they were not otherwise provided for in the Plan nor order of confirmation pursuant to 11 U.S.C. 1141(b) (including that they were not designated as assets with which to fund implementation of the Plan), and did not vest in the converted Chapter 7 estate on conversion to Chapter 7, because property so vested in the reorganized debtors remains so vested notwithstanding such conversion.

(*Id.* ¶ 20(a).)

In its abuse of process cause of action, Cobalis alleges that the portion of the December 29, 2011 Order requiring the dissolution of Cobalis is void for "lack of

---

[4] Cobalis is not pursuing the Intentional Interference with Prospective Economic Advantage claim that was originally part of this cause of action. (*See* Appellant's Opening Brief at 3 n.2.). Cobalis has also relinquished its third cause of action for Rescission of Settlement Agreement. (*See id.* at 3.)

6

due process and lack of personal jurisdiction over Cobalis in its legal capacity as reorganized debtor." (*Id.* ¶ 28.) Cobalis further alleges:

> The order confirming Cobalis' Plan constitutes an enforceable obligation on the part of Cobalis as a reorganized debtor in favor of the creditor-beneficiaries of the Plan. Once a corporation obtains the status of a reorganized debtor by reason of an order confirming its plan of reorganization, the Bankruptcy Court cannot exercise jurisdiction over the recognized debtor, with exceptions not here applicable, other than pursuant to the adversary proceeding process, in which an adversary complaint is filed naming the reorganized debtor as a defendant. . . . This is especially required when the relief sought against the reorganized debtor is an order to effectuate dissolution of its existence.

(*Id.* ¶ 29.) Cobalis asserts that, because the dissolution order was made in the core bankruptcy proceeding rather than in an adversary proceeding, the Bankruptcy Court lacked personal jurisdiction over Cobalis as a reorganized debtor. (*See id.* ¶ 30.) Furthermore, Cobalis asserts that the Bankruptcy Court lacked jurisdiction to order its dissolution under federal or Nevada law because Cobalis was a reorganized debtor, not in a Chapter 11 reorganization at the time of the dissolution order, and the confirmed Plan had no provision authorizing dissolution. (*See id.* ¶ 32.) With the threat of imminent dissolution, and the consequent suspension of public trading of its common stock, Cobalis allegedly suffered "substantial economic damage." (*Id.* ¶ 34.)

## II. LEGAL STANDARD

A district court has jurisdiction to hear bankruptcy appeals. *See* 28 U.S.C. § 158. "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. When considering an

appeal from the bankruptcy court, a district court uses the same standard of review that a circuit would use in reviewing a decision of a district court. *See In re Barof*, 105 F.3d 439, 441 (9th Cir. 1997). The Court reviews *de novo* the Bankruptcy Court's conclusions of law and reviews for clear error the Bankruptcy Court's findings of fact. *See In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Thus, to the extent the Court reviews a conclusion of law, it applies a *de novo* standard and to the extent it reviews a finding of fact, it applies a clear error standard.

### III. DISCUSSION

The Bankruptcy Court's Tentative Ruling ("TR"), dated August 8, 2013, was incorporated by reference into the two Orders dismissing the FAC. (*See* AP Docs. 130 and 141.) In dismissing the FAC, the Bankruptcy Court held that Cobalis lacks standing because all of Cobalis' assets, including its then inchoate usury claims, re-vested in the Trustee upon conversion of the case from Chapter 11 to Chapter 7. (*See* TR at 2.)

There is no Bankruptcy Code provision addressing what happens to the property of a debtor in a post-confirmation Chapter 7 conversion. *See Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 535 (9th Cir. BAP 2004), *aff'd*, 182 Fed. App'x 708 (9th Cir. 2006). However, "two plan components . . . determine whether an asset revests in a chapter 7 estate post-conversion: an explicit provision regarding the distribution of future proceeds of an asset to creditors, and the retention of broad powers in the bankruptcy court to oversee implementation of the plan." *Id.* (citing *Pioneer Liquidating Corp. v. U.S. Trustee (In re Consolidated Pioneer)*, 264 F.3d 803, 807 (9th Cir. 2001)).

Relying on the first component, Appellant argues that the Plan contained "an explicit provision regarding the distribution of future proceeds to creditors from five categories of assets: 1) income from operations; 2) sale of common stock; 3)

8

*recovery of any funds from 'currently pending litigation*;' 4) commitment from Chaim Stern to fund Plan; and 5) licensing, royalty and distribution agreements where Debtor has patent protection." (Reply Brief of Appellants at 12, emphasis in original.) Because funds from undisclosed and unscheduled litigation were not included as one of these sources, Appellant argues that the usury claims vested in Cobalis at the Plan confirmation and did not re-vest in the Chapter 7 Estate upon conversion.

However, Appellant's argument contradicts the "legion of authority all holding that post confirmation conversion revests all property of the debtor in the Chapter 7 trustee absent a clear plan or order provision providing to the contrary." (TR at 3, citing cases.) As explained by the Bankruptcy Court in its ruling denying Appellant's motion for reconsideration,

> Under the teachings of *Consolidated Pioneer* and *Captain Blythers* all property of the reorganized debtor, except that which may have been specifically carved out for other uses in the plan, vests in the trustee upon conversion in a case like this one where the court was vested with broad supervisory powers *under the plan. Blythers*, 311 B.R. at 535. *In other words, the presumption is for inclusion of* property of the debtor into the estate upon conversion. It must be specifically shown that one of the bases for exclusion should apply as identified in *Blythers* and *Consolidated Power* for Cobalis' argument to have any traction. . . . [T]he plan vests wide supervisory powers in the court and there is no mention anywhere in the plan of any carve out of any property for some use by the debtor outside the plan. So it follows as day follows night that whatever causes of action might have existed, known *or unknown* vested in the trustee for benefit of the estate as of the August 22, 2011 conversion.

(AP Doc. 190 at 2, emphasis in original.) The Bankruptcy Court further noted that "the sale/settlement by the trustee to YA Global included all causes of action and all

9

forms of property, know or unknown, which was concluded after notice to creditors, to which no objection was filed by debtor. . . .  There is nothing left which could support a usury right of action in favor of Cobalis, or the trustee, for that matter." (*Id.* at 3.)

In sum, the Bankruptcy Court was given extremely broad powers to supervise and oversee implementation of the Plan.  (*See* Plan, Retention of Jursidiction, § VI (M).)   This Plan language satisfies the second *Blythers* component and is indicative of the intent to devote all property, known or unknown, to the reorganization effort. *See In re Consolidated Pioneer*, 264 F.3d at 807 & n. 5 (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 589 (9th Cir. 1993) (concluding that assets revested in estate after confirmation because, although plan did not explicitly so provide, plan's clear purpose was to pay back creditors, and plan stated that bankruptcy court would be closely involved in administering Chapter 11 estate)). Accordingly, all of the Debtor's property, including the claims asserted in the FAC, re-vested in the Chapter 7 Estate upon conversion from Chapter 11 to Chapter 7. *See id.* at 807 n. 5 (citing *Smith v. Lee (In re Smith )*, 201 B.R. 267, 273 n.5 (D. Nev. 1996) ("[P]roperty revested in the Debtor upon confirmation becomes property of a Chapter 7 estate upon conversion."), *aff'd*, 141 F.3d 1179, 1998 WL 133445 (9th Cir.1998); *Carey v. Flintridge Lumber Sales, Inc. (In re RJW Lumber Co.)*, 262 B.R. 91, 93 (Bankr. N.D. Cal. 2001) ("The far better view, consistent with an integrated interpretation of the Code, is that upon conversion the Chapter 7 estate consists of all remaining assets held for the benefit of creditors.")).

Cobalis' property rights, including legal claims for relief, now belong to the Chapter 7 Estate under the Trustee's supervision.  "Once appointed a trustee, the debtor's assets and claims pass to the trustee, making the trustee the proper party in interest, and the only party with standing" to prosecute causes of action belonging to the Estate or challenge Orders of the Bankruptcy Court. *Moneymaker v. CoBen (In*

*re Eisen)*, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994) (quotation marks and citation omitted).  Thus, the Dismissal Orders are AFFIRMED on the ground that Cobalis lacks standing to pursue the claims set forth in the FAC.

### IV. CONCLUSION

For the foregoing reasons, the disputed rulings of the Bankruptcy Court (AP Docs. 130, 141 and 190) are hereby AFFIRMED and this appeal is DISMISSED.

Dated: September 24, 2014

**SO ORDERED:**

_____

Honorable Josephine L. Staton
United States District Judge